IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JAMES R. DRIGGERS,** | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * Civil Action No.: 15-00369 |
| | * |
| **BENEFICIAL FINANCIAL 1, INC.,** | * |
| | * |
| Defendant. | * |

## COMPLAINT

COMES NOW James R. Driggers, as Plaintiff in this proceeding and against the above-referenced Defendant as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), and 12 U.S.C. § 2617.

2. The Court has supplemental jurisdiction pursuant 28 U.S.C. § 1331 over the state law claims herein.

3. Venue is proper here because the events giving rise to Plaintiff's cause of action occurred in this district.

### THE PARTIES

4. Plaintiff, James R. Driggers (hereinafter referred to as "Plaintiff" or "Driggers"), is over the age of nineteen years and a resident citizen of Baldwin County, Alabama.

5. Upon information and belief Defendant, Beneficial Financial 1, Inc., (hereinafter referred to as "Beneficial"), is a foreign corporation doing business in the State of Alabama.

## FACTUAL ALLEGATIONS

6.	On April 13, 2007, Plaintiff executed a real estate mortgage with Beneficial Alabama, Inc., for $125,996.80. The loan was secured by his principal residence and is therefore a consumer debt.

7.	On information and belief, Beneficial Alabama, Inc., merged with Beneficial on or about September 29, 2009.

8.	Beneficial is a mortgage loan servicer. The term "servicer" means the person responsible for servicing of a loan.

9.	The principal businesses of Beneficial is loan servicing.

10.	The term "servicing" means receiving [collecting] any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

11.	At all relevant times, Beneficial was servicing the Plaintiff's loan on behalf of the actual owner of the loan.

12.	During 2009 and 2010, Mr. Driggers had trouble making his mortgage payments to Beneficial because his hours at work had been reduced.

13.	At all times pertinent hereto, Mr. Driggers received his mail, including his statements from Beneficial, at a post office box.

14.	Mr. Driggers was surprised when, he received a letter from the Sirote law firm, on behalf of Beneficial, stating that a foreclosure on his home had taken place April 9, 2010. This was because he had not received any notice of the foreclosure and had no knowledge of it.

15. He called the Sirote law firm and Beneficial inquiring about the foreclosure and was told that the foreclosure notices were mailed to his home address.

16. Mr. Driggers did not receive mail at his home address and, at all relevant times, did not even have a mailbox there.

17. Beneficial had purchased Plaintiff's home at a foreclosure sale on April 9, 2010 and eventually filed an ejectment action in the Circuit Court of Baldwin County, Alabama.

18. Driggers filed an answer and counter-claim alleging, among other things, wrongful foreclosure.

19. On August 19, 2010, Mr. Driggers filed a petition for bankruptcy relief.

20. The parties, Driggers and Beneficial, eventually reached an agreement in September of 2011. The settlement agreement called the foreclosure to be set aside, a loan modification, that brought the loan current, and other things. A motion filed with the Bankruptcy Court seeking approval of the settlement was granted October 11, 2011.

21. The state court case was dismissed on January 24, 2012.

22. However, Beneficial, in breach of the parties' agreement, failed and refused to have the foreclosure set side.

23. As a direct result of the failure to set aside the foreclosure and comply with the settlement agreement Driggers was damaged as follows:

> ➢ He incurred higher property taxes because he was unable to claim his homestead exemption;
> 
> ➢ He was unable to insure the property because he was not the owner of record;
> 
> ➢ He incurred charges for forced placed insurance;

- He was not given proper credit for his payments made pursuant to the modified loan agreement;

- He has been improperly charged late fees, property inspection fees and other fees;

- He incurred additional interest charges because Beneficial applied portions of his payments to its charges for insurance and property taxes;

- His credit standing and credit rating have been harmed;

- He has incurred court costs and legal fees; and

- He has suffered worry and mental anguish.

24. Mr. Driggers learned that the foreclosure had not been set aside during the early months of 2013 when he tried to purchase insurance on the home. He also checked the status his property taxes and learned, according to the Baldwin County Tax Collector, the property was still owned by Beneficial.

25. After some investigation, it was determined that Beneficial never filed the documents with the Baldwin County Probate Court reflecting the parties' agreement to set aside the foreclosure.

26. Plaintiff's counsel contacted the counsel for Beneficial and Beneficial on several occasions requesting the filing of the documents setting the foreclosure aside to no avail.

27. Because of Beneficial's breach of the settlement agreement Plaintiff was forced reopen the state court case on January 17, 2014.

28. The motion to reopen the state court case was granted on May 27, 2014 and thereafter a motion enforce the settlement agreement was filed on was filed on May 30, 2014.

29. On June 3, 2014, the court ordered Beneficial to comply with the parties' settlement agreement and a consent order setting the foreclosure aside was entered by the court on July 11,

4

2014. The parties' original agreement called for Beneficial to have the consent order recorded in the probate court but it did not do so until December 17, 2014.

30. In an effort to get the matter resolved, Plaintiff's counsel sent Beneficial a RESPA Qualified Written Request ("QWR") and Notice of Servicing Error ("NOE") on at least the following occasions:

- November 27, 2013;
- March 14, 2014;
- May 15, 2014;
- June 23, 2014; and
- May 15, 2015.

31. Beneficial was requested, among other things to set aside the foreclosure, review its records, acknowledge the modification and correct its treatment of Plaintiff's account.

32. Beneficial responded to the QWR/NOE's but failed to correct Plaintiff's account. Beneficial also failed to provide specifically requested information. Instead, Beneficial only provided a payment history and a copy of its forced placed insurance policy.

33. Plaintiff's damages have been increased because Beneficial did not file documents setting aside the foreclosure or correct Plaintiff's account in a timely fashion.

34. Beneficial engages in a pattern and practice of improperly responding to notices and requests from borrowers provided pursuant to RESPA Section 2605.

35. Beneficial's conduct herein, failing to correct Plaintiff's account after receiving five requests to do so, constitutes a pattern and practice of improperly responding to notices and requests from borrowers provided pursuant to RESPA Section 2605.

36. Beneficial had at least five different opportunities to properly respond to qualified written requests and notices of servicing errors sent to it on Plaintiff's behalf and failed to do so.

37. Beneficial took no reasonable measures to correct the error identified in Plaintiff's letter. Since its May 7, 2015 response, Beneficial has failed to comply with the parties' mortgage modification agreement.

38. Among its other obligations under RESPA Section 2605(e), Beneficial was required to make any "appropriate corrections" to the account. In this case, this required, at a minimum, an investigation of Plaintiff' claim that Beneficial was not complying with his loan modification and settlement agreement. Because of Beneficial's failure to correct its treatment of Plaintiff's account, he has been damaged as a result. He has incurred expenses in sending the qualified written request which, because of Beneficial's inaction, has been for naught, late charges, attorney's fees, inspection fees, court costs and other fees. This constitutes damages suffered resulting from Beneficial's failure to comply with its Section 2605(e) duties.

39. Furthermore, Plaintiff has also been caused to worry and lose sleep because Beneficial has threatened to foreclose on his home despite the fact he is current on his loan as modified.

40. On information and belief, Beneficial has failed to implement the loan modification agreed to by the parties in September 2011. By Beneficial's actions and inactions, it has failed to follow the terms and conditions of the settlement agreement and loan modification and has applied his payments incorrectly and continues to do so.

41. On information and belief, Beneficial negligently, wantonly, and/or willfully failed to take action to use payment funds to satisfy monthly mortgage payments as they came due pursuant to the modified loan and settlement agreement.

42. Beneficial negligently, wantonly, fraudulently, and in violation of duties owed to Plaintiff, failed to communicate any further with Plaintiff and failed to correct the disposition of this mortgage to the great detriment of Plaintiff.

## COUNT I
## BREACH OF MORTGAGE MODIFICATION AGREEMENT

43. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

44. The acts and omissions of Defendant in connection with management of the Plaintiff's account and mortgage constitute a breach of the parties' settlement agreement.

45. Plaintiff has suffered damage as a proximate result of the Defendant's breach.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Beneficial for breach of the settlement agreement and award him compensatory damages, including damages for mental anguish and emotional distress, plus attorney's fees, interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT II
## NEGLIGENCE

46. The allegations in the above paragraphs are hereby asserted and realleged by reference, as if fully and completely set out herein.

47. Defendant has been negligent in its servicing of Plaintiff's mortgage. Defendant's negligence includes, but is not limited to, its failure to accurately account for the payments made by Plaintiff. Beneficial also applied the funds and imposed charges which it knew or should have known were in violation of its agreement with Plaintiff. These actions constitute negligence and Plaintiff have suffered damage as a proximate result thereof.

**WHEREFORE, THE PREMISES CONSIDERED,** after all due proceedings, Plaintiff requests that the Court enter judgment in his favor against Beneficial and award compensatory damages, including mental anguish and emotional distress, as well as punitive damages, attorney's fees and costs.

## COUNT III
## WANTONNESS

48. The allegations in the above paragraphs are hereby asserted and realleged by reference, as if fully and completely set out herein.

49. Beneficial has been wanton in its servicing of Plaintiff's mortgage. Defendant's wantonness includes, but is not limited to, its failure to accurately account for the payments made by Plaintiff and to apply the funds and impose charges which it knew or should have known were in violation of its agreement with Plaintiff. These actions constitute wantonness and Plaintiff has suffered damage as a proximate result thereof.

**WHEREFORE, THE PREMISES CONSIDERED,** after all due proceedings, Plaintiff requests that the Court enter judgment in his favor against Beneficial and award compensatory damages, including mental anguish and emotional distress, as well as, attorney's fees, punitive damages and costs.

## COUNT IV
## (VIOLATIONS OF RESPA)

50. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

51. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to his loan servicer requesting information and documents pertaining to the servicing of his loan. That

provision also grants borrowers the right to submit a notice of servicing error ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e).

52. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. *Id*.

53. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Financial Protection Bureau recently exercised its authority under RESPA and clarified the borrower's rights to have errors corrected. See 12 C.F.R. § 1024.35.

54. Under Section 2605(e) and the implementing regulations ("Reg. X"), including the recent amendments thereto which servicers must take the following actions upon receipt of a QWR and/or NOE:

- Provide a written acknowledgment of the correspondence within five days of the servicer's receipt of the QWR;

- Within 30 days conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account and provide a the borrower with written explanation of the corrections made, the effective date of the correction and contact information for further assistance;

- If, after reasonable investigation, the servicer determines that no error was committed, it must, within 30 days of receipt of the notice, provide the borrower with a written explanation of reasons for its determination, a statement of the borrower's right to request documents relied on by the servicer in reaching its determination and contact information for further assistance; either the reason for

9

    ➢  the servicer's belief that the account is being serviced correctly or a description of the changes made; and

    ➢  If a servicer determines that it is not required to comply with these requirements then it must, within five days after receipt, provide written notice to the borrower setting forth the reasons for such determination.

55. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

56. Defendant is a "servicer" with respect to Plaintiff' loan as that term is defined in 12 U.S.C. § 2605(i)(2).

57. Plaintiff's November, 27 2013, March 14, 2014, May 15, 2014 June 23, 2014 and May, 2015 letter and supporting documents constitute "qualified written requests" and a "notice of servicing errors" within the meaning of 12 U.S.C. § 2605(e) and Reg X.

58. Beneficial has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWRs and NOEs as required under that section and Reg. X. Specifically, Beneficial failed to conduct any reasonable investigation of the errors described in Plaintiff's letters and failed to correct Plaintiff's account to reflect terms the parties' Settlement agreement.

59. Beneficial has also violated 12 U.S.C. § 2605(k) in at least the following ways:

    ➢  Failing to take timely action to respond to Plaintiff's notice of servicing error; and

    ➢  Failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE.

60. Plaintiff has suffered actual damages as a proximate result of Beneficial's failure to comply with Section 2605(e).

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Beneficial for violation of the RESPA, awarding the following relief:

    a.    Statutory and actual damages for each violation as provided in 12 U.S.C. § 2605(f);

    b.    Reasonable attorney's fees, and costs expended in this proceeding; and

    c.    Such other and further relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff request that this Court enter a judgment against Beneficial for compensatory damages, actual damages and attorney's fees as allowed by 12 U.S.C. § 2605.

**RESPECTFULLY** submitted on this the 27th day of July, 2015.

                                */s/Earl P. Underwood, Jr.*
                                EARL P. UNDERWOOD, JR.
                                Attorney for Plaintiff

**OF COUNSEL:**
**UNDERWOOD & RIEMER, P.C.**
**21 S Section Street**
**Fairhope, Alabama 36532**
**Phone:   251.990.5558**
**Email: epunderwood@alalaw.com**

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY OF THE ISSUES IN THIS CASE.**

                                */s/Earl P. Underwood, Jr*_____
                                **Earl P. Underwood, Jr.**

**THE DEFENDANT WILL BE SERVED BY CERTIFIED MAIL AS FOLLOWS**:

| Registered Agent Name | C T CORPORATION SYSTEM |
|---|---|
| Registered Office Street Address | 2 NORTH JACKSON ST., SUITE 605 MONTGOMERY, AL 36104 |